FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2016 MAR 30 AM 11: 59

CLERK
SO. DIST. OF GA.

MITSEAAH YACHT, LLC, )
      )
    Plaintiff, )
      )
v. )    CASE NO. CV414-236
      )
THUNDERBOLT MARINE, INC., )
      )
    Defendant. )
      )

## O R D E R

Before the Court is Defendant's Motion for Summary Judgment. (Doc. 20.) For the following reasons, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff Mitseaah Yacht, LLC may only recover direct damages. Accordingly, Plaintiff's claims for dockage fees, compensation for a builder representative, and a stolen prop blade and kayak are **DISMISSED**. Plaintiff's remaining claims survive. This case will proceed to trial.

## BACKGROUND

This case arises from the attempted repair of the sailing yacht MITSeaAH. (Doc. 26 at 1.) Plaintiff initially brought the yacht to Defendant Thunderbolt Marine, Inc. in October of 2012 for repair of the yacht's gear boxes. (Doc. 20, Attach. 3 at 2.) Although the work was expected to be limited and brief, it expanded over time. (Id.) The work ultimately encompassed

approximately 179 work orders; 288 job tasks; and work on the yacht's engine, hull, and exterior. (Id.) Captain Adam Lambert[1] oversaw the repair work on behalf of Plaintiff and was authorized to approve work orders and act as Plaintiff's agent. (Id.) The work was performed subject to certain Terms and Conditions (the "Terms"). (Doc. 20, Attach. 4.) The Terms stated in an "APPLICABLE LAW" clause that "[t]he rights and obligations of [Plaintiff and Defendant] shall be governed and determined by the laws of the state of Georgia . . . ." (Id.)

The Terms include clauses requiring Plaintiff to take certain actions before seeking relief and purporting to limit the types of damages that Plaintiff could seek. Specifically,

---

[1] Plaintiff initially filed an unsworn, unsigned declaration on behalf of Captain Lambert because Captain Lambert was at sea and unable to transmit a signed copy of his declaration. (Doc. 26 at 2.) Defendant did not file a motion to strike Captain Lambert's declaration. On August 26, 2015, Plaintiff submitted a "Notice of Filing" (Doc. 28), which the Court construes as a motion to substitute, containing a signed, unsworn declaration. Generally, Courts do not consider unsworn statements when deciding a motion for summary judgment. McCaskill v. Ray, 279 F. App'x 913, 915 (11th Cir. 2008). However, unsworn declarations that are signed and dated under penalty of perjury in compliance with 28 U.S.C. § 1746 are sufficient. Id. Because Plaintiff has shown good cause, the Court **GRANTS** the motion to substitute and has considered Captain Lambert's unsworn declaration when deciding this motion for summary judgment. Moreover, Defendant admits that, "Captain Lambert was either present or had the opportunity to be present to oversee and inspect all the work that was performed on the vessel." (Doc. 20, Attach. 3 at 2-3.) Captain Lambert's declaration provided specific detail from personal knowledge about Defendant's repair errors including why and how damage occurred. This is sufficient to rebut Defendant's argument that there is no evidence supporting many of Plaintiff's claims.

Section 2 of the Terms—titled "PAYMENT"—requires Plaintiff to "notify the [Defendant] in writing of any alleged billing discrepancies within 7 days of discovery and shall review such discrepancies with [Defendant] in writing 15 days after such notice." (Id.) Likewise, Section 7—titled "DELAY"—states that Defendant shall not "incur or be liable or responsible for any nonperformance of or delay in the work." (Id.) Section 10—titled "CUSTOMER'S INSPECTION/CLAIMS"—requires Plaintiff to

> inspect the Vessel or repaired parts immediately upon delivery thereof and shall within ten (10) days thereafter notify [Defendant] in writing of any claims of incomplete or unacceptable work. The failure of [Plaintiff] to notify [Defendant] of any such claims within said ten (10) day period shall constitute an irrevocable acceptance of the Vessel and all work and an admission by [Plaintiff] that the work fully complies with all agreed terms, specifications, and conditions.

(Id.)

The Terms also include a "WARRANTY AND DISCLAIMERS" clause stating that

> [t]he warranty shall be for a period of six (6) months from the date of delivery of the Vessel to [Plaintiff] and shall cover only the repair or replacement of work done or materials supplied to [Plaintiff] by [Defendant]. THE STATEMENT OF WARRANTY IS EXCLUSIVE AND IN LIEU OF ALL OTHER EXPRESS AND IMPLIED WARRANTIES WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE.

(Id.) Finally, the Terms include a "LIMITATIONS OF LIABILITY" clause. It states that

> IN NO EVENT SHALL [Defendant] BE LIABLE FOR ANY LOSS
> OF USE OF THE VESSEL OR LOSS OF, PROFITS, OR SPECIAL,
> INCIDENTAL OR CONSEQUENTIAL DAMAGES OR LOSSES, IN NO
> EVENT SHALL ANY ACTION BE COMMENCED AGAINST COMPANY
> MORE THAN ONE YEAR AFTER THE CAUSE OF ACTION WITH
> RESPECT TO WHICH THE CLAIM IS MADE HAS ACCRUED.

(Id.)

The yacht's repair was fraught with conflict. The parties estimated that the initial repairs would take 5-6 months, but the yacht remained in Defendant's care for nearly two years. (Doc. 26 at 1.) In June of 2014, the yacht left Defendant's shipyard after Plaintiff paid approximately $2,153,364.00. (Doc. 1 at 2.) Defendant claims that this two-year delay was the result of Plaintiff's unexpected broadening of the scope of work on the yacht. (Doc. 20, Attach. 1 at 2.) Plaintiff asserts that Defendant's defective work, mismanagement, and unskilled and unqualified workers caused the delay. (Doc. 28 at 3-4.)

Even with the long-lasting repair and high cost, much of the yacht remained unrepaired or damaged and further work had to be done. (Doc. 26.) According to Plaintiff, both parties discussed many of the issues prior to the yacht leaving Defendant's shipyard, while others were discovered sometime after the yacht was delivered. (Doc. 28 4-7.) These issues were also communicated to Defendant. (Id.) Plaintiff has alleged 18 specific injuries caused by Defendant:

1. Plaintiff claims that Defendant dented the yacht's hull during its haul and launch. (Doc. 25, Attach. 1 at 2; Doc. 28 at 4.) According to Plaintiff, the parties discussed this issue multiple times prior to the yacht's delivery. (Doc. 28 at 4.) However, Defendant argues that the types of lifts used to haul and launch the yacht could not have caused the damage. (Doc. 20 at 4.) Defendant also states that Plaintiff did not notify Defendant of the dent within 10 days of the yacht's delivery or make a warranty claim against Defendant. (Id.)

2. Plaintiff claims that Defendant defectively applied antifouling paint on the hull of the yacht. (Doc. 25, Attach. 1 at 2; Doc. 28 at 4.) Plaintiff asserts that this was discussed "on numerous occasions." (Doc. 28 at 4.) However, Defendant claims Plaintiff was responsible for any defects because Plaintiff authorized Defendant to paint in patches to save time. (Doc. 20, Attach. 7 at 2.) Furthermore, Defendant provided Plaintiff with a report on the quality of the paint job.[2] (Doc. 20 at 5.) Moreover, Plaintiff did not notify Defendant of the paint problems within 10 days of the yacht's delivery, or make a warranty claim against Defendant. (Id.)

---

[2] The report from Interlux—the company which selected the paint—details a number of errors in the paint job, including thin application, and poor adhesion. (Doc. 20, Attach. 7 at 7.)

3.  Plaintiff claims that Defendant caused damage to the engines when Defendant failed to pressure wash the fuel tanks and, as a result, left welding materials inside. (Doc. 25, Attach. 1 at 2; Doc. 28 at 4-5.) However, Defendant notes that Plaintiff did not notify Defendant of the error within 10 days of the yacht's delivery or make a warranty claim against Defendant. (Doc. 20 at 5.)

4.  Plaintiff claims that a prop blade and a kayak were stolen despite Defendant charging for security while the yacht was in the shipyard. (Doc. 25, Attach. 1 at 2; Doc. 28 at 5.) However, Defendant contends that it had no obligation to protect Plaintiff's personal property and that Plaintiff was offered, and declined, the opportunity to secure such property in lockers. (Doc. 20 at 6.)

5.  Plaintiff claims that Defendant crushed certain valuable materials while operating a forklift. (Doc. 25, Attach. 1 at 2; Doc. 28 at 5.) However, Defendant states it has no record of Plaintiff making such a claim for damaged materials or a record of such an incident. (Doc. 20 at 6.)

6.  Plaintiff claims that Defendant damaged a piano hinge on the yacht when Defendant's employees bent the hatch cover back too far. (Doc. 25, Attach. 1 at 2; Doc. 28 at 5.) However, Defendant states that Plaintiff did not notify Defendant of the damaged hinge within 10 days of the

yacht's delivery or make a warranty claim against
Defendant. (Doc. 20 at 6.)

7.  Plaintiff claims that Defendant charged for work that was
    not performed on the stern thruster. (Doc. 25, Attach. 1 at
    2; Doc. 28 at 5.) However, Defendant states that it was not
    notified of this billing discrepancy. (Doc. 20 at 7.)

8.  Plaintiff claims that Defendant defectively painted the
    yacht's hull. (Doc. 25, Attach. 1 at 3; Doc. 28 at 5.)
    However, Defendant claims that Plaintiff is at fault
    because Plaintiff rejected multiple draft work orders for
    the job due to high costs. (Doc. 20 at 7.) Defendant claims
    that Plaintiff ultimately determined that the yacht's crew
    would perform a portion of the work—sanding the vessel and
    performing the prep work—while Defendant would merely be
    responsible for painting. (Doc. 20 at 7.) Defendant claims
    it warned Plaintiff that Defendant could not be responsible
    if the crew performed an inadequate job. (Id.) Defendant
    also alleges that Plaintiff did not notify Defendant of the
    painting errors within 10 days of the yacht's delivery or
    make a warranty claim against Defendant. (Id.)

9.  Plaintiff claims that Defendant inappropriately painted the
    mast and boom rigs. (Doc. 25, Attach. 1 at 3; Doc. 28 at
    5.) However, Defendant claims that Plaintiff was
    responsible for the error because Captain Lambert oversaw

the application of primer and authorized Defendant to apply the topcoat. (Doc. 20 at 8.) Defendant also states that Plaintiff did not notify Defendant of the error within 10 days of the yacht's delivery or make a warranty claim against Defendant. (Id.)

10. Plaintiff claims that Defendant wasted specially ordered material due to sloppy cutting. (Doc. 25, Attach. 1 at 3; Doc. 28 at 6.) According to Defendant, no material was wasted because some was repurposed for use on other parts of the boat while the remainder was given to Captain Lambert. (Doc. 20 at 8.) Defendant also states that Plaintiff did not notify Defendant of this claim. (Id.)

11. Plaintiff claims that it had to retain a representative from the yacht's builder to oversee repairs. (Doc. 25, Attach. 1 at 3; Doc. 28 at 6.) However, Defendant claims that it was never asked, and did not consent, to cover the cost of Plaintiff's representative. (Doc. 20 at 9.) Defendant also states that Plaintiff did not notify Defendant of the error within 10 days of the yacht's delivery or make a warranty claim against Defendant. (Id.)

12. Plaintiff claims that Defendant charged an excessive dockage fee. (Doc. 25, Attach. 1 at 3; Doc. 28 at 6.) However, Defendant notes that the Terms did not guarantee a completion date for the work. (Doc. 20 at 9.) Likewise,

Defendant points out that the Terms state that Defendant shall not "be liable or responsible for any nonperformance of or delay in the work." (Id.)

13. Plaintiff claims that it had to repair faulty hatch dogs installed by Defendant. (Doc. 25, Attach. 1 at 4; Doc. 28 at 6.) However, Defendant states that Plaintiff did not notify Defendant of the error within 10 days of the yacht's delivery or make a warranty claim against Defendant. (Doc. 20 at 10.)

14. Plaintiff claims that it had to redo modifications Defendant made to the yacht's drive line. (Doc. 25, Attach. 1 at 4; Doc. 28 at 6.) However, Defendant states that Plaintiff did not notify Defendant of the error within 10 days of the yacht's delivery or make a warranty claim against Defendant. (Doc. 20 at 10.)

15. Plaintiff claims that hydraulic fittings Defendant repaired leaked and had to be repaired elsewhere. (Doc. 25, Attach. 1 at 4; Attach. 2 at 2; Doc. 28 at 6.) However, Defendant states that Plaintiff did not notify Defendant of the error within 10 days of the yacht's delivery or make a warranty claim against Defendant. (Doc. 20 at 10-11.)

16. Plaintiff claims that work Defendant performed on the aft door hydraulics prevented the pins from retracting. (Doc. 25, Attach. 1 at 4; Doc. 25, Doc. 28 at 7.) Plaintiff also

claims that Defendant attempted to repair this issue, but was unable to complete the repair. (Id.) However, Defendant states that Plaintiff did not notify Defendant of the error within 10 days of the yacht's delivery or make a warranty claim against Defendant. (Doc. 20 at 11.)

17. Plaintiff claims that Defendant's faulty painting of the transom caused a blister that had to be painted out. (Doc. 25, Attach. 1 at 4; Doc. 25, Attach. 2 at 2; Doc. 28 at 7.) However, Defendant states that Plaintiff did not notify Defendant of the error within 10 days of the yacht's delivery or make a warranty claim against Defendant. (Doc. 20 at 11.)

18. Plaintiff claims that Defendant's painting of the name boards was faulty. (Doc. 25, Attach. 1 at 4; Doc. 28 at 7.) However, Defendant complains that any fault lies with Plaintiff because Plaintiff would not allow Defendant to remove the hardware on the name boards in order to perform a more adequate job. (Doc. 20 at 11.) Defendant also states that Plaintiff did not notify Defendant of the error within 10 days of the yacht's delivery or make a warranty claim against Defendant. (Id.)

Plaintiff filed a complaint on October 27, 2014 invoking this Court's maritime jurisdiction. (Doc. 1 at 1.) Plaintiff alleges claims of negligence, breach of contract, breach of

implied warranty of workmanlike performance, and breach of duties as a bailee. (Id. at 3.) Plaintiff seeks as damages fees and expenses for surveyors, inspectors and a builder representative; the value of time expended by the captain and crew of the yacht in supervising and completing unfinished work and repairs; the costs of bringing outside contractors to Savannah to oversee repairs; the cost to haul, inspect and repair the yacht due to the defective paint job; the cost to repair the yacht's fuel tanks; the amount Plaintiff overpaid Defendant for uncompleted work; and the cost of the extended dockage and electricity charges while the yacht was in Defendant's possession. (Id.) Defendant filed a Motion for Summary Judgment (Doc. 20) arguing that the Terms restrict or prohibit Plaintiff's recovery on the 18 issues discussed above. Plaintiff responds, however, that the Terms include unenforceable "red letter" clauses under maritime law and, alternatively, that even if the clauses are valid, they do not defeat Plaintiff's claims for breach of contract, breach of implied warranty of workmanlike performance, or breach of duty as a bailee. (Doc. 26.)

**ANALYSIS**

I.    SUMMARY JUDGMENT STANDARD

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part

of each claim of defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the
> initial responsibility of informing the district
> court of the basis for its motion, and identifying
> those portions of the pleadings, depositions,
> answers to interrogatories, and admissions on file,
> together with the affidavits, if any, which it
> believes demonstrate the absence of a genuine issue
> of material fact.

<u>Celotex</u>, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. <u>Matsushita</u>, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Id.</u> at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. <u>See</u>, e.g., <u>Tidwell v. Carter Prods.</u>, 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." <u>Barfield v. Brierton</u>, 883 F.2d 923, 933-34 (11th Cir. 1989).

II. <u>CHOICE OF LAW</u>

As an initial matter, the Court must determine whether the "APPLICABLE LAW" clause in the Terms is valid. Plaintiff argues that this Court should look to federal maritime law to determine the term's applicability. (Doc. 31 at 1.) Defendant initially disagreed with this proposition, arguing instead that this Court should apply Georgia law without reference to maritime law.

(Doc. 29 at 1-2.) However, Defendant now recognizes (Doc. 33 at 2) that choice of law provisions in maritime contracts are valid in this circuit only to the extent that they do not frustrate the national interests provided by maritime law. Accordingly, the Court must first determine if the contract at issue in this case is maritime in nature, and second if the application of Georgia law would frustrate national interests.

"Maritime jurisdiction does arise . . . when a ship undergoes repairs." Hatteras of Lauderdale, Inc. v. Gemini Lady, 853 F.2d 848, 849-50 (11th Cir. 1988) (citing New Bedford Dry Dock Co. v. Purdy, 258 U.S. 96, 99 (1922)). Because this case involves the repair of an oceangoing vessel, federal maritime law governs unless the matter is inherently local. See e.g., Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 22-23 (2004). Since the parties have not argued, and the Court cannot determine from the record, that the matter is inherently local, the Court proceeds to the second part of the analysis.

In the Eleventh Circuit, "parties to a maritime contract may set the terms of the agreement between them, including choice of law, 'provided that the application of state law does not frustrate national interests in having uniformity in admiralty law.' " Odyssey Marine Expl., Inc. v. Unidentified, Shipwrecked Vessel or Vessels, 512 F. App'x 890, 893 n.3 (11th Cir. 2013) (quoting Coastal Fuels Mktg., Inc. v. Fla. Express

14

Shipping Co., Inc., 207 F.3d 1247, 1251 (11th Cir. 2000); citing King v. Allstate Ins. Co., 906 F.2d 1537, 1541 (11th Cir. 1990) ("There being no public policy problem whatsoever in parties to a maritime . . . contract setting the terms of the [agreement] between them, we uphold their freedom to do so.")). In addition to desiring uniformity, admiralty law also requires that maritime contracts operate to "deter negligence." See Edward Leasing Corp. v. Uhlig & Assocs., Inc., 785 F.2d 877, 888 (11th Cir. 1986) (citing Bisso v. Inland Waterways Corp., 349 U.S. 85 (1955)) (finding exculpatory clauses invalid in admiralty when they absolve entities of all liability). Accordingly, the choice of law provision in this case is valid only insofar as it does not violate the policies of maritime law.

Plaintiff states that enforcement of the "APPLICABLE LAW" clause would cause the Terms to violate national interest in maritime law. (Doc. 31 at 6.) Specifically, Plaintiff alleges that certain exculpatory clauses in the Terms are considered invalid, "red letter"[3] clauses because they inappropriately limit

---

[3] "Red letter clauses"

>   are frequently used in marine service, shipbuilding and ship repair contracts. Such contracts are variously worded but, in general attempt to do all of the following: (1) exclude express and implied warranties; (2) limit the time for filing suit; (3) place a ceiling on damage exposure; (4) limit liability to the cost of repair or replacement of the defective material or workmanship; (5) exclude

liability and do nothing to deter negligence. (Doc. 26 at 4.) Plaintiff claims that while these clauses may be valid under Georgia law, they are not valid under maritime law. (Doc. 31 at 6-8.)

In Diesel "Repower", Inc. v. Islander Invs. Ltd., 271 F.3d 1318, 1324 (11th Cir. 2001), the Eleventh Circuit Court of Appeals set forth a three part test to determine whether a limitation of liability clause in a maritime contract is valid. "First, the clause must clearly and unequivocally indicate the parties' intentions. Second, the clause may not absolve the repairer of all liability and the liability risk must still provide a deterrent to negligence. Third, the 'businessmen' must have equal bargaining power so there is no overreaching." Id. at 1324. While Defendant agrees with Plaintiff that this Court should look to the Islander test to determine if the clauses are valid, it does not agree that Islander voids any of them. Because the Court has determined that this is a maritime contract and that "red letter" clauses are inapplicable in

---

consequential damages such as lost profits, lost charter hire; (6) exclude specific risks such as liability for pollution, third party claims, and force majeure occurrences; (7) exclude the cost of defense and attorneys' fees.

Thomas J. Schoenbaum, 1 Admiralty & Maritime Law § 5-8 (5th ed. 2015).

maritime law, each clause is evaluated according to _Islander_ prior to determining the clause's validity under Georgia law.

A. _Islander Test_

As an initial matter, there is no evidence of unequal bargaining power. Defendant is a corporate entity engaged in the repair of ships. (Doc. 1 at 1-2.) The sole members of Plaintiff likewise have significant business acumen and experience. (Doc. 33 at 3.) There is also no evidence that this is a contract of adhesion or that Plaintiff was unable to negotiate beneficial contract terms. In fact, Plaintiff was able to negotiate work orders more suitable to its budget and expectations. (Doc. 20, Attach. 7 at 9-23.) Accordingly, the Terms comport with _Islander's_ third requirement.

i. _"PAYMENTS" Clause_

Plaintiff argues that the "PAYMENTS"[4] clause is not applicable to Plaintiff's claims for waste of materials, dockage fees, and stern thruster repair because it is "inapplicable on its face". (Doc. 31 at 8.) However, the applicability of a clause to a claim does not explain whether the clause deters negligence or unequivocally indicates the parties' intentions. Absent any further argument under _Islander_, and after a plain

_____

[4] The Eleventh Circuit Court of Appeals has applied the _Islander_ test to similar clauses in the past. _See_ _Merrill Stevens Dry Dock Co. v. M/V YEOCOMICO II_, 329 F.3d 809, 812 (11th Cir. 2003) (evaluating presentment clause in light of _Islander_).

reading of the clause, the Court concludes that it meets the requirements of Islander.

    *ii. "DELAYS" Clause*

Likewise, this Court concludes that the "DELAYS" clause passes muster under the Islander test. That clause purports to exempt Defendant from delays or nonperformance due to "causes beyond Company's reasonable control and without additional cost or expense to Company." (Doc. 20, Attach. 4.) As a result, this clause acts, as both Defendant and Plaintiff have pointed out, as a "force majeure" clause. (Doc. 26 at 12; Doc. 29 at 10.) The plain language of the clause does not prohibit recovery for negligence or otherwise discourage Defendant from performing in a workman-like capacity. Accordingly, the clause acts a sufficient deterrent to negligence and is unambiguous. As a result, this Court cannot conclude that Defendant's "DELAYS" clause fails under Islander.

    *iii. "CUSTOMER'S INSPECTION/CLAIMS" and "WARRANTY AND DISCLAIMERS" Clauses*

Plaintiff argues that the "CUSTOMER'S INSPECTION/CLAIMS" clause requiring that Plaintiff inspect the yacht within 10 days and notify Defendant of any claims of incomplete or unacceptable work is void on its face. (Doc. 26 at 8.) Plaintiff also argues that the clause causes conflict with the "WARRANTY AND DISCLAIMERS" clause allowing recovery for issues arising within

six months of delivery. (Id. at 7.) Plaintiff claims that this conflict results in ambiguity and does not deter negligence. (Id.) Generally " 'a contractual provision should not be construed as being in conflict with another unless no other reasonable interpretation is possible.' " Merrill Stevens Dry Dock Co. v. M/V YEOCOMICO II, 329 F.3d 809, 814 (11th Cir. 2003) (quoting Maccaferri Gabions, Inc. v. Dynateria Inc., 91 F.3d 1431, 1439 (11th Cir. 1996)). Accordingly, "an ambiguity is not invariably present when a contract requires interpretation." Id. (quoting Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co., 254 F.3d 987, 1004 (11th Cir. 2001)).

However, the Court cannot conclude as a matter of law that these clauses are clear and unequivocal or that they operate to deter negligence. Plaintiff is correct that requiring Plaintiff to inspect the yacht within 10 days and notify Defendant of any issues or else admit "that the work fully complies with all agreed terms, specifications, and conditions" (Doc. 20, Attach. 4), conflicts with the warranty clause providing Plaintiff with six months to seek repairs (id.). Presumably, the "CUSTOMER'S INSPECTIONS/CLAIMS" clause was intended to address patent issues, while the "WARRANTY AND DISCLAIMERS" clause was intended to address latent issues with Defendant's work. However, neither of these clauses makes that distinction clear and both could be applied to mutually eliminate recovery under the other.

Accordingly, it is possible that acceptance of the yacht under the "INSPECTION/CLAIMS" clause would prohibit recovery under the "WARRANTY AND DISCLAIMERS" clause.

Even if these clauses did pass the Islander test and Georgia law were applied, questions of fact remain. First, Plaintiff alleges that Defendant waived strict compliance with the "INSPECTION/CLAIMS" clause. In Georgia, if a Defendant had "actual notice of [] defects . . . a jury question exist[s] as to whether [Defendant] waived strict compliance with the notice provision contained." RHL Props., LLC v. Neese, 293 Ga. App. 838, 841, 668 S.E.2d 828, 830 (2008) (citations omitted); accord. Stimson v. Georgia Laycock, Inc., 247 Ga. App. 1, 5, 542 S.E.2d 121, 125 (2000) (waiver in home building contract based on knowledge); Dep't of Transp. V. Dalton Paving & Constr., 227 Ga. App. 207, 215-16, 489 S.E.2d 329, 337-38 (1997) (waiver in highway construction contract based on knowledge); APAC-Ga., Inc. v. Dep't. of Transp., 221 Ga. App. 604, 606-07, 472 S.E.2d 97, 99-100 (1996) (same)). Here, Plaintiff alleges that Defendant waived strict compliance with the "CUSTOMER'S INSPECTION/CLAIMS" clause because Defendant was aware of the issues with the yacht's repair and took some steps to begin remedying them. (Doc. 26 at 8.) Plaintiff points to Captain Lambert's statements that Defendant was aware of the yacht's faulty repairs prior to leaving the shipyard, along with

evidence that Defendant was offered the opportunity inspect the yacht while it was harbored outside of Georgia. (Id. at 9; Doc. 28 at 4.) This is sufficient factual evidence of waiver to deny summary judgment to Defendant on the basis of the "INSPECTION/CLAIMS" clause.

Second, Plaintiff argues that the "WARRANTY AND DISCLAIMERS" clause does not bar recovery because the defects occurred within the warranty period. (Doc. 26 at 11.) Defendant contends that there is no evidence that the damage occurred within the six-month warranty period, or that Plaintiff presented the yacht to Defendant for repair. (Doc. 29 at 9.) In Georgia, if an injury subject to a limited warranty occurs within the warranty period, it is recoverable even if the claim is reported after the termination of that period. Nulite Indus. Co., LLC. v. Horne, 252 Ga. App. 378, 380, 556 S.E.2d 255, 257 (2001). However, a defendant must be offered a reasonable opportunity to repair prior to a plaintiff establishing breach of warranty. McDonald v. Mazda Motors of Am. Inc., 269 Ga. App. 62, 64, 603 S.E.2d 456, 460 (2004). Captain Lambert's affidavit states that all damage to the yacht either occurred within the six-month period or was the result of faulty repair work prior to the yacht's delivery. (Doc. 28 (referencing list of damages and dates contained in Doc. 25, Attach. 1).) Furthermore, Plaintiff's failure to bring the yacht back to Defendant's

shipyard for repair does not preclude Plaintiff from obtaining relief. The record contains evidence that Plaintiff did inform Defendant of the repair issues and that Defendant's representative observed and evaluated some of the faulty repair work. (Doc. 28 at 5.) This, too, prohibits granting Defendant's request for summary judgment on the basis of the "WARRANTY AND DISCLAIMER'S" clause.

      *iv.*   *"LIMITATITIONS OF LIABILITY" and "INDEMNIFICATION" Clauses*

Plaintiff argues next that the "LIMITATIONS OF LIABILITY" clause is unclear, ambiguous, and does nothing to deter negligence because it conflicts with the "INDEMNIFICATION" clause requiring Plaintiff to indemnify Defendant for acts of gross negligence and willful or wanton conduct. (Doc. 26 at 10.) The "INDEMNIFICATION" clause states

> [w]hile the vessel is in the [Defendant's] possession, [Plaintiff] shall defend, indemnify and hold harmless the [Defendant], its employees and agents, from and against all loss, damage, injury, death, legal fees and expenses, or other liability, including loss or damage to [Plaintiff's] vessel or work accomplished on any portion of the vessel, in the event any such liability is in any way caused by the negligence or willful conduct of [Plaintiff], or [Plaintiff's] employees, agents, or parties contracted or hired by [Plaintiff].

(Doc. 20, Attach. 4.) As an initial matter, Plaintiff appears to have confused the terms of this contract. The "INDEMNIFICATION" clause states only that Plaintiff is required to indemnify

Defendant for liability caused by Plaintiff or Plaintiff's employees. (Id.) The clause does not require Plaintiff to indemnify Defendant for Defendant's own negligence or willful misconduct. More importantly, the clause does not bar Plaintiff from bringing claims against Defendant for Defendant's negligence, gross negligence, or willful or wanton misconduct.

However, the "LIMITATIONS OF LIABILITY" clause does prohibit Plaintiff from recovering damages for loss of use, loss of profits, or special, incidental or consequential damages. While limitations that prohibit recovery for negligence are invalid under the Islander test, limitations on damages are valid. See Islander, 271 F.3d at 1325 (holding valid clause excluding recovery for loss of income, punitive, progressive, or consequential damages). Likewise, even Plaintiff recognizes (Doc. 26 at 10) that similar limitations on damages are valid under Georgia law. See Edward, 785 F.2d at 888 ("parties to [] repair contracts may validly stipulate that the repaier's liability is to be limited"); accord Monitronics Int'l, Inc. v. Veasley, 323 Ga. App. 126, 135, 746 S.E.2d 793, 802 (2013) ("It is . . . well settled that exculpatory clauses in which a business seeks to relieve itself from its own negligence are valid and binding in this State, 'and are not void as against public policy unless they purport to relieve liability for acts of gross negligence or willful or wanton conduct.' " (quoting

23

_Holmes v. Clear Channel Outdoor, Inc._, 284 Ga. App. 474, 477, 644 S.E.2d 311, 314 (2007))). Here, the "LIMITATIONS OF LIABILITY" clause does not prohibit recovery for Plaintiff's negligence, it merely limits recovery only to direct damages. Accordingly, both clauses passes muster under the _Islander_ test and Georgia law. As a result, the Court concludes that, while the "CUSTOMER'S INSPECTION/CLAIMS" clause and "WARRANTY AND DISCLAIMERS" clause are void or do not prevent Plaintiff from seeking relief, the "LIMITATIONS OF LIABILITY" clause, "DELAYS" clause, "PAYMENT" clause, and "INDEMNIFICATION" clause are valid under the _Islander_ test and Georgia law.

Defendant's argument as to Plaintiff's claims 5, 6, 13, 14, 15, 16, and 17 is that they are barred due to non-compliance with the "CUSTOMER'S INSPECTION" or "WARRANTY AND DISCLAIMERS" clauses, or some combination of both. This Court has concluded that those clauses are either void under maritime law or that questions of fact remain that may preclude their application. Accordingly, Defendant's request for summary judgment for those claims is **DENIED**.

III. PLAINTIFF'S CLAIMS

Defendant argues that either the Terms or specific facts preclude recovery for Plaintiff's claims 1, 2, 3, 4, 7, 8, 9, 10, 11, 12, and 18. As to the injuries asserted by claims 1, 2,

3, 8, 9, and 18;[5] Defendant presents certain facts that it alleges bar recovery. As to claims 2, 8, 9, and 18, Defendant argues that Captain Lambert authorized or otherwise interfered with the paint jobs. (Doc. 20.) As to claim 3, Defendant argues that there is no evidence that slag could have gotten into the fuel tanks. (Id.) As to claim 1, Defendant argues that the lifts used could not have caused the dent in the hull.[6] (Id.) However, Captain Lambert's responsibility for the paint job, or whether his interference affected its quality, is a question of fact for the jury. So too is whether the lifts Defendant used caused damage to the yacht's hull or whether slag[7] was small enough to enter the fuel tanks. Accordingly, Defendant's request for summary judgement as to those claims is **DENIED**.

However, Defendant asserts that claims 4, 7, 10, 11, and 12 are barred either by the "LIMITATIONS OF LIABILITY", "PAYMENT", or "DELAYS" clauses. Because these clauses comply with the

---

[5] Defendant claims that the "LIMITATIONS OF LIABILITY" clause bars recovery under claims 1—dent in hull—and 9—rig paint—but has provided no support for that assertion.

[6] Defendant claims that the Terms required Plaintiff file an action within "one year after the cause of action with respect to which the claim is made has accrued." (Doc. 20, Attach. 4 at 2). Captain Lambert, however, argues that the dent in the hull happened on both the haul and launch in March of 2013 and in January of 2014. (Doc. 28 at 3-4 (referencing dates in list of damages (Doc. 25, Attach 1 at 2)).) Accordingly, the tolling agreement referenced by Defendant (Doc. 20, Attach. 8) allows Plaintiff's claim survive as the one year period would not have expired.

[7] Plaintiff asserts that the material may have also been grinding and welding debris. (Doc. 25 at 3; Doc. 28 at 5.)

Islander test, the Court turns to Georgia law for their interpretation and validity. Other than as discussed above, Plaintiff has not argued that the remaining clauses are invalid under Georgia law. All that remains for this Court, therefore, is to determine if the clauses apply to the remaining claims.

A. Claim 7 - Stern Thruster

Plaintiff initially alleged that Defendant charged for work that was not performed on the stern thruster. Defendant claims that the "PAYMENT" clause prohibits Plaintiff's recovery. (Doc. 20 at 7.) In Plaintiff's response to Defendant's Motion for Summary Judgment, Plaintiff explained that the claim is not whether Defendant "charged for work that wasn't performed" (Doc. 25, Attach. 1 at 2), but instead that "the stern thruster was worked on but never made operable." (Doc. 28 at 5.) As recast, this is a claim for negligence or breach of contract rather than a payment dispute. Since the "PAYMENT" clause applies only to payment disputes, it does not operate to bar Plaintiff's claim. As a result, Defendant's request for summary judgment as to that claim is **DENIED**.

B. Claim 10 - Material for Hull Plating

Plaintiff alleges that Defendant's sloppy work wasted material. (Doc. 25, Attach. 1 at 3; Doc. 28 at 6.) Defendant again asserts that this claim is barred under the payment clause. Similar to claim 7 above, this claim appears to be based

on breach of contract or negligence rather than a payment dispute. Accordingly, Defendant's motion for summary judgment as to that claim is **DENIED**.

### C. Claim 4 – Stolen Prop Blade and Kayak, Claim 11 – Shipyard Representative, and Claim 12 – Dockage

Plaintiff's remaining claims are more appropriately characterized as damages for either Plaintiff's negligence, breach of contract, breach of implied warranty, or breach of duty as a bailee.[8] Plaintiff claims that a prop blade and kayak were stolen while the yacht was in Defendant's care (Doc. 25, Attach. 1 at 2; Doc. 28) and that Defendant should cover Plaintiff's costs associated with hiring a shipyard representative to oversee the repairs (Doc. 25, Attach. 1 at 3; Doc. 28). Plaintiff also alleges that it paid excessive dockage fees because of Defendant's negligence and faulty work. (Id.) Defendant asserts that Plaintiff's claims for recovery for the costs of the shipyard representative, the stolen prop blade and kayak, and dockage fees are barred by the "LIMITATIONS OF LIABILITY" clause. (Doc. 20 at 6.)

---

[8] The Court notes that Defendant has argued solely that Plaintiff is prohibited from recovery for each of the repair errors or damages that Plaintiff alleged. Defendant has provided no argument that it was not negligent, did not breach the contract, did not breach the implied warranties, or complied with its duties as a bailee. Absent that argument, the Court cannot conclude as a matter of law that the causes of action themselves fail.

Plaintiff has not pointed to any case law, either in Georgia or under federal maritime law holding that the "LIMITATIONS OF LIABILITY" clause is invalid. Morever, Georgia courts have routinely recognized that failure of a limited warranty, as may have occurred here, does not negate clauses excluding specific types of damages. See, e.g., Hightower v. Gen. Motors Corp., 175 Ga. App. 112, 114, 332 S.E.2d 336, 338-39 (1985) ("The breach or defeat of a limited warranty to repair or replace, of course, does not simultaneously invalidate other limitations of damages contained in the new car warranty . . . .") (overruled on other grounds); A-larms, Inc. v. Alarms Device Mfg. Co., 165 Ga. App. 382, 386, 300 S.E.2d 311, 314 (1983) ("[C]onsequential damages may be excluded or limited unless such would be unconscionable, and such limitation of damages where the loss is commercial is not prima facie unconscionable."). Accordingly, under the terms of that clause, Plaintiff may not recover for loss of use, loss of profits, or special, incidental or consequential damages. (Doc. 20, Attach. 1 at 3.) All that remains for Plaintiff are direct damages. See, e.g., Atl. Sounding Co., Inc. v. Townsend, 496 F.3d 1282, 1284 (11th Cir. 2007) (whether certain types of damages may be recovered a question of law). Direct damages are those damages that "represent the benefit of the bargain." Imaging Sys. Int'l, Inc. v. Magnetic Resonance Plus, Inc., 227 Ga. App. 641, 644,

490 S.E.2d 124, 127 (1997); see also Ga. Grain Growers Ass'n v. Craven, 95 Ga. App. 741, 747, 98 S.E.2d 633, 637 (1957) ("Direct damages are such as follow immediately upon the act done.").

Even if Plaintiff could prove the injuries alleged in claims 4, 11, and 12, Plaintiff would not be entitled to recover the damages it seeks. No reasonable jury could conclude that recovery for the cost of the yacht's builder is a direct damage. Likewise, no reasonable jury could conclude that the costs of the stolen prop blade and kayak are direct damages. Finally, recovery for dockage fees is also not a direct damage. There is no evidence that recovery for the cost of a builder representative, securing Plaintiff's personal property, or dockage fees represents the benefit of the bargain Plaintiff entered into for repair of the yacht. Accordingly, Defendant's Motion for Summary Judgment as to claims 4, 11, and 12 is **GRANTED**. Plaintiff is on notice that it may not seek any special, incidental, or consequential damages stemming from the injuries in this case.

## CONCLUSION

Before the Court is Defendant's Motion for Summary Judgment. (Doc. 20.) For the foregoing reasons, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff may only recover direct damages. Accordingly, Plaintiff's claims for dockage fees, compensation for a builder representative, and a

stolen prop blade and kayak are **DISMISSED**. Plaintiff's remaining claims survive. This case will proceed to trial.

SO ORDERED this **28**ᵗʰ day of March 2016.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA